UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK VAN LEIS,

      Plaintiff,

v.                                 CASE No. 8:11-CV-2634-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-one years old at the time of the administrative decision and who has a high school education, has been

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

employed at various jobs, including as a construction worker, laborer stores, and meat trimmer (Tr. 35, 70-71). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled on May 5, 2007, due to polysubstance dependence and schizoaffective disorder (Tr. 185). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of obesity, mood disorder, history of polysubstance abuse (in remission), history of schizoaffective disorder, and attention deficit hyperactivity disorder (Tr. 14). The law judge stated further that she did not find the plaintiff's back or knee pain to be a severe impairment because they do not result in a significant limitation in functioning (Tr. 15). She concluded that, with his impairments, the plaintiff can perform a range of medium work with the following restrictions (Tr. 17):

> [T]he claimant cannot climb ladders, ropes, and scaffolds, must avoid work using dangerous moving machinery or unprotected heights, exposure to extreme heat (over 80 degrees), his period of concentration is limited to 2 hours at a time, and he is limited to performing work that

-2-

involves simple repetitive tasks with only
occasional direct interaction with the public and
coworkers.

The law judge determined, based upon the testimony of a vocational expert,

that the plaintiff is capable of returning to past relevant work as a meat

trimmer (Tr. 22). Alternatively, the law judge found, based on the vocational

expert's testimony, that there are jobs that exist in significant numbers in the

national economy that the plaintiff can perform, such as hand packager,

cleaner housekeeper, and industrial cleaner (Tr. 23). The law judge therefore

ruled that the plaintiff was not disabled (id.). The Appeals Council let the

decision of the law judge stand as the final decision of the defendant.

II.

A. In order to be entitled to Social Security disability benefits

and supplemental security income, a claimant must be unable "to engage in

any substantial gainful activity by reason of any medically determinable

physical or mental impairment which ... has lasted or can be expected to last

for a continuous period of not less than twelve months."   42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the

terms of the Social Security Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). In this case, also, the plaintiff must show that he became disabled before his insured status expired on December 31, 2008, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

-4-

conclusion is not enough to justify a reversal of the administrative findings."
Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert.
denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the
courts, to resolve conflicts in the evidence and to assess the credibility of the
witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is
the responsibility of the Commissioner to draw inferences from the evidence,
and those inferences are not to be overturned if they are supported by
substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.
1963).

Therefore, in determining whether the Commissioner's decision
is supported by substantial evidence, the court is not to reweigh the evidence,
but is limited to determining whether the record as a whole contains sufficient
evidence to permit a reasonable mind to conclude that the claimant is not
disabled. However, the court, in its review, must satisfy itself that the proper
legal standards were applied and legal requirements were met. Lamb v.
Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.

III.

The plaintiff argues that the law judge failed to give proper weight to the opinions of a treating physician and an examining physician (Doc. 19, pp. 9-12). He also asserts that the law judge should not have discounted his or his mother's testimony (id., pp. 12-14). Further, the plaintiff contends that the finding that he could perform his prior work as a meat cutter is not supported by substantial evidence (id.,pp. 14-15). None of these arguments is meritorious.

A. The plaintiff argues first that the law judge failed to give proper weight to the opinions of treating physician Dr. Eric Ranon, and Gregory Marone, Ed.D., a psychologist who evaluated the plaintiff on one occasion (id., pp. 9-12).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is

conclusory or inconsistent with the physician's own medical records. <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

1. Dr. Ranon, who specializes in internal medicine, completed on August 9, 2010, a Medical Source Statement of Ability to do Work-Related Activities (Physical)(<u>see</u> Tr. 520-23). Dr. Ranon opined that the plaintiff could stand and/or walk less than two hours in an 8-hour workday and could not occasionally lift 10 pounds (Tr. 520). Furthermore, Dr. Ranon opined that the plaintiff was limited to occasional reaching, handling, and fingering, and could never climb stairs, kneel, crouch, crawl or stoop (Tr. 521, 522). Dr. Ranon also opined that the plaintiff's abilities to see, hear, and speak were limited (Tr. 522). Dr. Ranon attributed the physical restrictions to chronic back spasms, chronic right knee pain, insomnia, and side effects from ADHD (attention deficit hyperactivity disorder) medication (Tr. 521).

The law judge acknowledged that Dr. Ranon was a treating physician (Tr. 20). Further, the law judge stated that she had considered Dr. Ranon's medical source statement and noted that Dr. Ranon opined the plaintiff could perform less than sedentary work (<u>id</u>.). However, the law judge stated that she did not give Dr. Ranon's opinion "significant weight

because it is conclusory in nature and otherwise not supported by the objective medical findings in the record as a whole or in Dr. Ranon's own records" (id.).   This explanation is sufficient to discount Dr. Ranon's opinions. See Lewis v. Callahan, supra.

Significantly, the conclusory nature of these opinions is enough, by itself, to justify the law judge to discount them. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007).   Thus, Dr. Ranon does not provide any meaningful explanation for his opinions of extreme functional limitations, even though the Medical Source Statement instructs the physician (repeatedly) to identify the "particular medical signs," "laboratory findings," and "clinical findings" which support his conclusions (Tr. 520-523). Rather, Dr. Ranon provides a list of diagnoses, without explaining why those diagnoses cause disabling functional limitations. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986))("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is

insufficient; instead, the claimant must show the effect of the impairment on her ability to work.").

Furthermore, as the law judge stated, Dr. Ranon's own records do not support such extreme limitations. Thus, Dr. Ranon based his opinions of disabling functional limitations upon the plaintiff's chronic back spasms, chronic right knee pain, insomnia and side effects from ADHD medication (Tr. 521). However, Dr. Ranon's treatment notes do not contain functional limitations due to any of these conditions. See Longworth v. Commissioner Social Security Admin., 402 F.3d 591, 596 (6th Cir. 2005)("a lack of physical restrictions constitutes substantial evidence for a finding of non-disability"). Furthermore, Dr. Ranon's treatment records do not reflect any objective testing or significant findings on examination which substantiate the opined severity of these conditions. To the contrary, most of Dr. Ranon's treatment notes reflect a normal general appearance and normal examinations of the extremities and musculoskeletal system (see, e.g., Tr. 389, 390, 391, 392, 393, 394, 475, 476, 477, 478).

Moreover, as the law judge noted, there is no evidence that Dr. Ranon even treated the plaintiff for "chronic" back spasms (Tr. 14-15). Thus,

back spasms appear in only one of Dr. Ranon's progress notes, and the plaintiff's musculoskeletal examination was normal at that visit (Tr. 476). Also, although Dr. Ranon's treatment notes contain complaints of right knee pain, Dr. Ranon noted that an x-ray of the knee was negative (Tr. 401) and an MRI of the right knee was negative except for small joint effusion (Tr. 395; see Tr. 396).    Additionally, Dr. Ranon's examinations revealed only occasional knee tenderness (see, e.g., Tr. 400).   Moreover, Dr. Ranon's treatment notes contain no functional limitations due to insomnia, and indicate that medication relieves this condition (id.). Finally, the basis for Dr. Ranon's opinion that the plaintiff was limited by side effects from ADHD medication is not evident in his treatment notes, as the only notation in this regard was a new patient note dated 5/29/07 which stated that the plaintiff had stopped taking ADHD medication prescribed by another physician after experiencing side effects (Tr. 403).

In addition, the law judge also correctly reasoned that the objective findings in the record do not support disabling functional physical limitations. Thus, as the law judge noted in the decision, objective testing of the plaintiff's knee did not reveal any significant abnormalities (Tr. 15; see

-11-

Tr. 396, 401) and physical examinations of the plaintiff were essentially normal (Tr. 15, 18, 19-20). In this connection, consultative examiner Himagiri Ravi, M.D., observed that the plaintiff had a normal gait, "good range of motion," negative straight leg raising, 5/5 motor strength, and she did not detect tenderness, crepitus, effusion or trigger points (Tr. 349-51). Further, the plaintiff was able to remove his shoes and get on and off the examination table without difficulty (Tr. 348-49). Edwin Lamm, M.D., performed a second consultative examination one and one-half years later with similar results. Thus, Dr. Lamm observed that the plaintiff had a normal gait, his motor strength was intact, straight leg raising was negative, and that the plaintiff's range of motion was only mildly limited (Tr. 451, 452). In sum, Dr. Lamm opined that there was "no evidence of significant physical limitations" (Tr. 452). These findings, moreover, were consistent with an examination during a hospital visit during which the plaintiff was noted to have a normal joint range of motion, no motor or sensory deficits, and no swelling, deformities, clubbing or edema (Tr. 510, 512). In sum, the law judge's decision to discount Dr. Ranon's opinion is reasonable, and amply supported by the record.

2.   The plaintiff also argues that the law judge improperly discounted the opinion of one-time examining psychologist, Gregory Marone, Ed.D., to whom the plaintiff was referred by his representative for an evaluation (Tr. 461). Dr. Marone stated that the plaintiff was "agitated, emotionally distressed, extremely unfocused, hyperactive, [and] distracted" (Tr. 464). He provided a varied list of possible diagnoses, but stated that, "[w]hile diagnostic impressions tend to be unclear and intertwining, their severity presents as very extreme" (Tr. 466). Dr. Marone opined that he "did not view the [plaintiff's] emotional state as sufficiently stable for competitive employment" and that the plaintiff's condition was "chronic and potentially at optimum psychiatric improvement" (id.).

As a one-time examining consultant, Dr. Marone's opinion is not entitled to controlling weight or special significance. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Furthermore, Dr. Marone's opinion that he "did not view the [plaintiff's] emotional state as sufficiently stable for competitive employment" (Tr. 466) is not even a medical opinion, but rather opines on a vocational issue reserved to the

Commissioner. 20 C.F.R. 404.1527(d), 416.927(d); Lanier v. Commissioner of Social Security, supra, 252 Fed. Appx. at 314.

The law judge acknowledged in his decision Dr. Marone's opinions, including that the severity of the plaintiff's mental illness is "very extreme" and his "emotional state was not sufficiently stable for competitive employment" (Tr. 20). However, the law judge gave Dr. Marone's assessment "little weight because it is not supported by the remainder of the record" (Tr. 21). The law judge elaborated that "this is a one-time examination and is inconsistent with the consultative examination and the current treatment records" (id.).

This explanation provided an adequate basis for discounting the opinion of Dr. Marone. As the law judge pointed out, Dr. Marone was not a treating physician, and his opinion of disabling mental limitations is not compelled by the record. In this regard, the law judge noted several mental health evaluations that were inconsistent with Dr. Marone's opinions of disabling mental impairments (see Tr. 16, 18, 19, 21). For example, in May 2007, at the commencement of the disability period, the plaintiff's prognosis was opined to be "good," and he was assessed a GAF of 55 (Tr. 335, 336).

-14-

The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.[2] A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers"). Id.

At an April 2008 mental status examination the plaintiff was oriented as to time, place, person, and situation; he had no apparent deficits in attention and concentration; his memory appeared intact; an examination of his perceptual processes did not reveal any hallucinations or other perceptual dysfunctions; and he was assigned a GAF of 60 (Tr. 353-55). Moreover, Dr. Lamm noted during a consultative examination on March 12, 2009, that the plaintiff "appears to have good general understanding [and] seems to be oriented" and Dr. Lamm "did not detect any mood or behavior abnormalities" (Tr. 451-52). During a June 2009 mental status evaluation by

---

[2]It is noted that the Commissioner has declined to endorse the use of GAF scores in disability determinations. Wind v. Barnhart, supra, 133 Fed. Appx. at 692 n.5. However, they are examined here because they are referenced in the law judge's decision and the plaintiff's memorandum.

the plaintiff's long-term substance abuse counselor and licensed mental health counselor, the plaintiff was again observed to be oriented x4; he had no apparent deficits in attention and concentration; his memory appeared intact; and no hallucinations or other perceptual dysfunctions were noted (Tr. 468-70). He was again assigned a GAF of 60 (Tr. 470). In July and October 2009 the plaintiff was found to be alert and oriented x3, and was assessed GAF scores of 55 and 60, respectively (Tr. 504, 505, 507). Additionally, in October 2009, the plaintiff reported he was "doing fine [with] his present medications" (Tr. 504). In February 2010 the plaintiff was observed to be oriented x4 and, other than mild depression, there were no clinically significant findings regarding his appearance, speech, thought processes, cognition, or mood/affect (Tr. 503). The plaintiff was assessed a GAF of 65 (Tr. 500-01), which indicated only mild symptoms. See Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34 (A rating of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships.").

In sum, there is ample evidence which supports a finding that Dr. Marone's opinion of disabling limitations is inconsistent with the overall record.

Moreover, the law judge also considered the opinions of J. Patrick Peterson, Ph.D., and James Mendelson, Ph.D., non-examining psychologists who reviewed the plaintiff's mental health records (Tr. 16-17; see Tr. 404-19; Tr. 432-48). In opining that the plaintiff did not suffer from disabling mental limitations, Dr. Peterson noted that the plaintiff resided independently, engaged in a full range of activities of daily living, had hobbies, and socialized with family and neighbors (Tr. 406). Furthermore, Dr. Peterson pointed out that mental treatment services were confined to a supportive/palliative/medical maintenance role (id.). Dr. Peterson opined further that the treatment source input is more accurately suggestive of a mild to moderate adjustment reaction in an irresponsible and manipulative individual (id.).

The plaintiff argues that there was no basis to reject Dr. Marone's opinion because "[t]here is no contrary evidence from any mental health expert or other physician who has examined or treated Mr. Leis" (Doc. 19, p. 10). As discussed above, this contention is incorrect.

-17-

The plaintiff also contends that the law judge improperly relied on the opinions of non-examining doctors to find him not disabled (id., pp. 10, 11, 12). The law judge accorded weight to the opinions of non-examining reviewers Drs. Peterson and Mendelson, although she did not fully accept them, as the law judge found the plaintiff had a greater social limitation (Tr. 17). The law judge explained that she gave little weight to Dr. Marone's opinions because they were inconsistent with the overall record, including the opinion of consultative examiner, Dr. Lamm, who opined three weeks earlier that the plaintiff's mental status was normal (Tr. 21).

Furthermore, it is noted that aspects of Dr. Marone's examination were inconsistent with his opinion of "very extreme" symptoms of a mental disorder (Tr. 466), including Dr. Marone's observations that the plaintiff was "polite and cooperative at all times," he "was able to express thoughts and ideas in a logical manner," and there was an absence of cognitive limitations (Tr. 464). Moreover, while Dr. Marone opined in June 2009 that the plaintiff was "potentially at optimum psychiatric improvement" with a GAF of 40-50 (Tr. 466), the law judge correctly pointed out that subsequent records showed the plaintiff doing well from a psychiatric perspective (Tr. 16; see Tr. 500-

04). Under these circumstances, the law judge may give greater weight to the opinion of a non-examining doctor over a consulting physician. See Wilkinson v. Commissioner of Social Sec., 289 Fed. Appx. 384, 386 (11th Cir. 2008)("The ALJ did not err in assigning minimal weight to the medical opinion of the examining physicians supporting Wilkinson's claim of disability because he found, after reviewing the entire record, that their opinions were not supported by the evidence.").

The plaintiff cites to three medical records and "GAF scores as low as 50" to show that the evidence supports a finding of disabling mental impairments (see Doc. 19, p. 11). However, the issue is not whether the record could support such a finding, but whether the evidence compels that finding. See Adefemi v. Ashcroft, supra. The evidence in this case clearly does not compel a finding of mental disability. Thus, although a GAF of 50 is at the top of the range of serious impairments, the plaintiff also had GAF scores in the mid-50's (which the law judge noted are consistent with her findings of moderate symptoms or limitations in social and occupational functioning (Tr. 21)), and even in the 60's (see Tr. 501, 503), which reflect only mild symptoms.

Further, the treatment records cited by the plaintiff do not compel a finding of disability. Thus, the plaintiff fails to note with regard to the October 2008 record in which the plaintiff reported mood swings, paranoia, and irritability, that the plaintiff had run out of his medication and reported that he "could tell a difference" without the medication (Tr. 424). Furthermore, although a February 2010 record noted that the plaintiff was having "mild" hallucinations, the plaintiff could nonetheless function adequately, as he was assessed a GAF of 65 (see Tr. 501). Moreover, as discussed, there are numerous records which do not reflect disabling mental limitations, and it is the province of the law judge to resolve conflicts in the record.[3] See Watson v. Heckler, 738 F.2d 1169, 1172 (11th Cir. 1984)(noting it is the responsibility of the administrative law judge to resolve the conflict

---

[3]An example of this evidentiary conflict is the differing observations of the plaintiff during mental health examinations conducted just one day apart. Thus, on June 3, 2009, Dr. Marone viewed the plaintiff as "agitated, emotionally distressed, extremely unfocused, hyperactive, [and] distracted" (Tr. 464). Dr. Marone added that the plaintiff's "affect and mood seemed expansive and near manic" and that he "observed extreme visual scanning, marked startle effect, rapid speech and ease of confusion" (id.). In contrast, the following day, the plaintiff's long-time substance abuse counselor found that the plaintiff's speech was normal, logical and coherent; he did not exhibit atypical psychomotor activity; he appeared oriented x4; and there were no apparent deficits in attention and concentration (Tr. 468, 469).

between physician's opinions). Accordingly, the plaintiff has failed to show that the law judge erred in giving little weight to the opinion of Dr. Marone.

B. The plaintiff also argues that the law judge improperly discounted the credibility of the plaintiff's allegations of disabling mental limitations (Doc. 19, pp. 12-14). Notably, the law judge did not totally reject the plaintiff's allegations of mental impairments. Thus, she found that the plaintiff has severe mental impairments (Tr. 14) and, consequently, "his period of concentration is limited to 2 hours at a time, and he is limited to performing work that involves simple repetitive tasks with only occasional direct interaction with the public and coworkers" (Tr. 17).

The plaintiff's argument that the law judge should have fully credited his allegations of disabling mental limitations is properly deemed abandoned because the plaintiff failed to develop this contention, in violation of the scheduling Order (Doc. 14, p. 2). Thus, after citing to the legal standards, the plaintiff's credibility argument consists of the following (Doc. 19, pp. 13-14):

> Here, the testimony of Mr. Leis and his mother are corroborated by the medical evidence and the history provided in the medical evidence. The hallucinations Mr. Leis experiences have not

> ceased even with medication.  Mr. Leis cannot
> tolerate the stress associated with infrequent,
> ordinary daily activity, and his testimony is
> buttressed by Dr. Marone's report.

There is not one record citation to the testimony that the plaintiff argues was

not credited.  This deficiency violates the scheduling Order which requires

that all "discrete challenges must be supported by citations to the record of

the pertinent facts" (Doc. 14, p. 2).

In all events, the law judge's credibility determination is properly

explained.  Here, the law judge stated the pain standard and cited to the

pertinent regulations and Social Security Rulings (Tr. 17-18).  The law judge

found that the plaintiff's "impairments are not as limiting as alleged and

would not prevent [him] from performing work at the residual functional

capacity noted above on a regular and continuing basis" (Tr. 21).  In this

connection, the law judge explained (id.):

> In evaluating the claimant's mental impairments,
> the undersigned notes that the record shows a
> history of significant long-term substance abuse,
> resulting in an extended stay at a residential dual
> diagnosis treatment program ending in May 2007.
> Subsequently, the claimant and his mother
> described ongoing significant mental dysfunction,
> but this is not supported in the medical records.
> The claimant has not required subsequent mental

-22-

health hospitalization and the mental status findings in the record have generally been normal. Further the Global Assessment of Functioning (GAF) Scores in the treatment record are consistent with moderate symptoms or limitations in social and occupational functioning (Exhibits 5F, 7F, 19F, and 22F). The undersigned finds that the claimant's allegations of mental dysfunction and the statements of his mother are not fully credible to the extent that they are not consistent with the residual functional capacity. Although he may continue to experience some symptoms of his mental impairments, he remains functional from a mental health perspective and acknowledges the ability to perform a moderate range of routine activities of daily living independently, as noted under the evaluation of the "B" criteria. The claimant has been prescribed and has taken appropriate medications for his mental impairment and the treatment record is consistent with stable mental functioning.

This explanation is more than adequate to discount the plaintiff's subjective allegations of disabling mental limitations. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006). Further, the plaintiff makes no cogent argument undermining any of the reasons given by the law judge for discounting his credibility (see Doc. 19, pp. 13-14). Rather, he merely asserts that Dr. Marone's report buttresses his testimony (id., p. 14). However, as discussed above, the law judge gave

sufficient reasons, supported by substantial evidence, for discounting Dr. Marone's opinions. Therefore, this argument is unmeritorious.

C. The plaintiff's final argument is that the residual functional capacity found by the law judge "does not permit" the plaintiff to perform his past work (id.). This contention is similarly meritless.

The law judge found that the plaintiff could perform his prior work as a meat trimmer based upon the vocational expert's testimony (Tr. 22). A vocational expert's testimony will constitute substantial evidence if the law judge poses a hypothetical question which comprises all of the claimant's impairments.   Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

In this case, the law judge's hypothetical question reflected her residual functional capacity determination (compare Tr. 17 with Tr. 71-74). The vocational expert, in response, opined that the plaintiff could perform his prior work as a meat trimmer (Tr. 74). Therefore, the law judge's finding that the plaintiff could perform his prior work as a meat trimmer is supported by substantial evidence.  See Wilson v. Barnhart, supra.

The law judge asked the expert hypothetical questions which reflected most of the plaintiff's residual functional capacity, and the expert testified that the plaintiff could perform his past work as a meat trimmer (Tr. 72). The law judge then added the limitation that the plaintiff could have only occasional contact with the public or with others in the workplace, such as coworkers (Tr. 74). After the expert discussed the effect this limitation would have on certain jobs the expert had identified, the following exchange occurred between the law judge and the expert (id.):

Q: How about the meat trimmer?

A: We would – no, we'd still have contact [phonetic]. Over there, we're in proximity, we're not in contact [INAUDIBLE]. So it should be okay. [INAUDIBLE].

The plaintiff argues that the expert's testimony "does not appear to support the finding" that he could perform his prior work as a meat trimmer because "some of [the testimony] is inaudible and some of it is not logical" (Doc. 19, p. 14). The plaintiff does not identify what is illogical about this response and, although there are apparently words that were inaudible to the transcriber, the vocational expert's opinion is discernable. Thus, the expert

indicates that, while the meat trimmer job would require the plaintiff to be in proximity of people, it would not require contact (Tr. 74). This is consistent with the plaintiff's residual functional capacity, which limited the plaintiff to "only occasional direct interaction with the public and coworkers" (Tr. 17).

Further, the law judge's question immediately following the expert's response regarding the level of public interaction for a meat trimmer confirms that any words inaudible to the transcriber did not change the substance of the expert's opinion. Thus, the law judge asked (Tr. 74) (emphasis added):

> Q: Are there <u>other</u> jobs that could be done within the hypothetical that are more or less isolated from — within occasional interaction?
>
> A: Yeah.

Significantly, the plaintiff was represented at the hearing by a social security consultant who cross-examined the expert (Tr. 75). The plaintiff's representative at the hearing apparently understood the expert's opinion regarding the meat trimming job, as he did not ask the expert to clarify that testimony, or pose any other questions concerning that job (see Tr. 75-76). Therefore, the plaintiff failed to carry his burden of showing that he

-26-

is unable to perform his prior work as a meat trimmer. See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991); Williams v. Barnhart, 140 Fed. Appx. 932, 936 (11th Cir. 2005).

In all events, the Commissioner correctly points out that the law judge identified several other jobs in the economy that exist in sufficient numbers that the plaintiff could perform as an alternative basis for finding the plaintiff not disabled (Doc. 21, pp. 22-23; Tr. 23). Thus, the law judge did not stop at step four of the sequential analysis regarding past work, but proceeded to the fifth step in the analysis and determined that there is other work that the plaintiff could perform in the national economy.

Specifically, the law judge additionally found, based on the testimony of the vocational expert, that an individual with the plaintiff's residual functional capacity could perform the jobs of hand packager, cleaner housekeeper, and cleaner industrial (Tr. 23). Furthermore, that conclusion is supported by the substantial evidence in light of the expert's testimony (Tr. 75). The plaintiff does not mention, or challenge, this additional finding. Therefore, even if the plaintiff could not perform past work, he has failed to

show that the law judge erred in finding that the plaintiff could perform other work in the national economy and therefore was not disabled.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _18th_ day of January, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE